**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

*Electronically Filed*

| | | |
|---|---|---|
| **HERMAN ANDREW GESENHUES,** | * | Case No.:  3:19-00204-JHM |
| | * | |
| **Plaintiff,** | * | Judge Joseph H. McKinley, Jr. |
| | * | |
| **v.** | * | |
| | * | |
| **RADIAL, INC. and ADECCO** | * | |
| **STAFFING,** | * | |
| | * | |
| **Defendants.** | * | |

**DECLARATION OF RACHEL PRENTISS**

I, RACHEL PRENTISS, declare and state as follows:

1.        I am the Operations Manager/Onboarding for Adecco USA, Inc. ("Adecco"). I have worked for Adecco or its predecessor entities since October 2006.  As the Operations Manager/Onboarding, I am responsible for the overall processes and implementation of policies involving documentation related to the hiring of associates to be placed with Adecco clients nationwide.  The facts contained herein are true based on my personal knowledge, and if called upon as a witness in this case, I could and would testify competently to the truth thereof.

2.        Adecco is one of the largest staffing companies in the United States that provides a full range of recruitment and staffing solutions to meet the evolving workforce needs of Adecco's clients and the temporary employees ("associates") who are placed for employment at client sites.  Adecco maintains its corporate headquarters in Jacksonville, Florida, but has branches and offices in 47 states, including Kentucky.

3.        Adecco maintains a proprietary database known as Custom Match ("CM") that houses the personnel information of Adecco associates.  Each record entry in the CM file of each associate is created at or near the time of the event by someone with personal knowledge of the

1

event.  The associates' CM files are kept in the regular course of business and accurately depict the events and activities related to those associates.

4.    Similar to the CM system, Adecco uses US Verify in the regular course of business.  US Verify is a web-based application used by Adecco for all associates at the time of their hire.   The documents and records contained therein are true and correct copies of documents created or acknowledged by associates or other persons with personal knowledge of the records or events stated therein.  In the normal course and scope of my duties, I can and regularly do, access associates' onboarding documents stored in the US Verify system.  I am also familiar with the way in which these documents are created and maintained.

5.    I have reviewed Herman Gesenhues' CM file and all the onboarding documents executed and processed by Mr. Gesenhues in his US Verify file as they are maintained by Adecco in the regular course of business.  Mr. Gesenhues was an associate who was placed by Adecco in the temporary position providing services for an Adecco client, Radial, Inc. ("Radial").  When Adecco places an associate in a temporary assignment, an Assignment List is created listing their dates of assignment, temporary position, and their duties.  Mr. Gesenhues' Assignment List shows that he was placed temporarily with Radial on approximately October 11, 2017.

6.    Generally, applicants who seek placement through Adecco must first register on AdeccoUSA.com, create a username and password, and complete an application for consideration for the position.  If the applicant meets certain minimum requirements for the position, an Adecco recruiter typically interviews the applicant by phone and sends a link via an e-mail for the applicant to complete any testing or assessments needed for the position.  If an applicant is ultimately selected for the position, the recruiter will notify the applicant that he/she must complete new hire documents through a web-based application known as US Verify.

7.      Adecco has utilized US Verify as its employee onboarding tool for individuals seeking to be placed for temporary positions at Adecco clients since 2010.  US Verify is a web-based tool that delivers new-hire on-boarding forms electronically to individuals selected for assignment.  As part of Adecco's on-boarding process, all applicants who are hired by Adecco (the "New Employees") receive certain documents electronically which require their electronic signature.  These include the I-9 form, US Verify allows employees to view and complete the I-9 employment verification form, the Federal W-4 form, applicable State Tax forms, Adecco personnel forms such as the payroll choice form, mandatory contact notice form, background authorization and release, reference check release, notice of health care benefit options, a copy of the employee handbook, as well as any state specific necessary forms regarding disability, family and pregnancy leave, dispute resolution and arbitration agreements (collectively "Electronic Documents").  US Verify also allows Adecco to bundle any client specific forms that may be applicable for the position for which the associate has been selected.  In short, US Verify serves as a single repository for associates to complete necessary new hire and on-boarding documents specific to an assignment for which an associate has been placed by Adecco.  All New Employees must review and electronically sign the Electronic Documents to acknowledge their receipt of certain information and documents using US Verify.  All Electronic Documents signed by New Employees are kept and maintained in US Verify.

8.      US Verify has the functionality to securely deliver the on-boarding forms either at an Adecco office or remotely wherever the employee is able to access a computer.  The process begins by an Adecco Recruiter (or other qualified Adecco employee) creating a new record in US Verify for the associate.  The Recruiter enters the associate's personal information, including the

3

name and the email address provided by the associate into US Verify to create an initial record. The associate can then access the websecure link to complete the forms.

9. Based on information available to me on US Verify, Mr. Gesenhues was sent an e-mail by an Adecco representative to the email address he registered with Adecco, so he could access US verify and complete his on-boarding. On October 9, 2017, using that websecure link (which required, for identification and security purposes, that Mr. Gesenhues enter his unique email address and password), Mr. Gesenhues electronically signed his E-Signature Agreement and completed and electronically signed his on-boarding documents, described below.

10. In order to access the on-boarding documents in US Verify, the associate must do the following:

    a. Log into his personal email using his email's username and password;

    b. Open the email sent from Adecco and click on an individualized web link; and

    c. Enter personal information such as the associate's unique email address.

11. Upon accessing US Verify, the associate is shown the list of documents that the associate must complete in sequential order. The very first document the associate is asked to complete is a standard I-9 verification of employment eligibility. The next document that the associate can access is the "Electronic Signature Agreement." Before the associate can proceed in accessing any other document the associate must acknowledge and agree to the Electronic Signature Agreement ("E-Signature Agreement"). The E-Signature Agreement specifically states the following:

> By providing your electronic signature below, you:
> - Agree that your electronic signature holds the same value as your signature.
> - Agree that you have fully read and understand all information preceding your electronic signature in each location where your electronic signature appears.

By clicking the "Electronically Sign This Form" button below I certify that the above information is true and correct, and I agree to the conditions of hiring.

The associate is then directed to click on the green highlighted button. A true and accurate copy of the E-Signature Agreement signed electronically by Mr. Gesenhues is attached herein as **Exhibit A**.

12.     Upon acknowledging agreement to the E-Signature Agreement, the associate is directed to several documents before being directed to the Dispute Resolution and Arbitration Agreement for Consultants/Associates form (the "Arbitration Agreement").

13.     The Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA Rules") automatically load up so the associate can review the AAA Rules before proceeding to the Arbitration Agreement form. Additionally, at any time after the on-boarding process is complete, the associate can request to view a hardcopy of the AAA Rules at an Adecco Branch.

14.     Associates must electronically sign the Arbitration Agreement by clicking on a green button indicating "Sign and Continue" before the associate can proceed with the next document in US Verify.

15.     I have reviewed Adecco's business records, and Mr. Gesenhues' on-boarding documents maintained in US Verify. These records and documents show that Mr. Gesenhues followed each of the on-boarding steps as discussed above, including entering his personal information to access US Verify, agreeing to the Electronic Signature Agreement, and electronically signing his on-boarding documents and the Arbitration Agreement using his personal email's unique password. On October 9, 2017, Mr. Gesenhues electronically signed the Arbitration Agreement before proceeding with the next on-boarding document. Also, on that date, a representative for Adecco then co-signed the Arbitration Agreement on behalf of the

5

Company.  The associate has the ability to print or download the Arbitration Agreement.  A true and accurate copy of the Arbitration Agreement signed electronically by Mr. Gesenhues is attached hereto as **Exhibit B**.

16.    Paragraph 9 of the Arbitration Agreement allows an associate to opt out of the Arbitration Agreement by requesting an Opt Out form via a specific link to an e-mail address provided for within Paragraph 9.  If the associate desires to opt out, the associate must click on the e-mail link and request a copy of an Opt Out form from Adecco's Human Resources Department.  The HR Department then delivers the Opt Out form to the associate via U.S. Verify and the associate must then submit the signed Opt Out form within thirty days of signing the Arbitration Agreement.  The Opt Out form is then uploaded into US Verify and made a part of the associate's US Verify records.  Paragraph 9 of the Arbitration Agreement provides that the associate and Adecco have mutually accepted the terms of the Arbitration Agreement if the associate does not opt out in a timely manner.

17.    Based on my review of Mr. Gesenhues' US Verify records and confirmation with the designated custodian of Opt Out forms with Adecco's HR Department, Adecco did not receive any e-mail or any request by Mr. Gesenhues asking for the Opt Out form.  Adecco has no record of a signed and executed Opt Out form from Mr. Gesenhues and none exists in his US Verify file.

18.    One of the last Adecco forms that an associate must complete as part of the on-boarding process in US Verify is the "Acknowledgment of Company Forms."  This form lists all documents that were part of the package on US Verify, and requires the associate to acknowledge receipt of and having agreed to read and accept the terms of the on-boarding

6

forms. Mr. Gesenhues electronically signed the Acknowledgment of Company Forms and had to click on the electronic signature button in confirming his electronic signature.

21.    Upon completing the on-boarding process, the associate is given the opportunity to save or print each and every document contained in the process.

22.    Adecco has a substantial interest in the accuracy of these records, as they are its primary means of verifying that a newly-engaged associate (i) has received the information presented in the on-boarding process, (such as the company's workplace violence policy and policy against harassment), (ii) has provided certain information required for human resources and payroll purposes (such as a taxpayer identification number and emergency contact information), and (iii) has agreed to abide by various company rules.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of June, 2020, at Melville, New York.

*Rachel Prentiss*
Rachel Prentiss

4819-1035-0522, v. 1

7

## E-Signature Agreement

US Verify is a web-based hiring process that greatly reduces paperwork. You will be asked to provide your signature electronically on the required forms.

By providing your electronic signature below, you:

- Agree that your electronic signature holds the same value as your signature.
- Agree that you have fully read and understand all information preceding your electronic signature in each location where your electronic signature appears.

**By clicking the "Electronically Sign This Form" button below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

**Your Signature:** HERMAN A GESENHUES (e-sign I agree) **Date:** 10/09/2017

EXHIBIT A

**Voluntary Dispute Resolution and Arbitration Agreement for Consultants/Associates**

This Dispute Resolution and Arbitration Agreement for Consultants/Associates ("Dispute Resolution Agreement") is entered between __ADECCO_____, its successors and assigns and its officers, directors, employees, affiliates, subsidiaries and parent companies (collectively referred to as the "Company"), and __HERMAN A GESENHUES_____ ("Employee").

**Recitals**

A.      The Company desires to consider Employee for placement or the continuation of Employee on temporary work assignments at Company's client(s) ("Client(s)");

B.      Employee is desirous of such consideration or continued assignment; and

C.      Employee and the Company desire to resolve any disputes concerning the terms, conditions or benefits of Employee's employment.

NOW THEREFORE, based on the above, and in consideration of the mutual covenants and conditions set forth herein, the Parties hereto agree as follows:

1.      It is the Company's goal that workplace disputes or claims be handled responsibly and on a prompt basis. Employee and the Company are encouraged to take advantage of the procedures in the Company's Open Door Policy, explained in the Handbook, and solve problems and disputes informally, through dialog with Employee's supervisor, manager or Human Resources representative. Absent resolution through such process, the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect, except as noted in Paragraph 2.  These Rules can be obtained from the Company Human Resources Department or on line at www.adr.org. The agreement to arbitrate includes any Claims that the Company may have against Employee, and/or that Employee may have against the Company, Company client(s), and/or Company and/or Company client(s)' officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set forth below. The Company and Employee agree that the aggrieved party must give written notice of any Claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law sets forth for such Claim.  This Agreement shall be enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and shall survive after the employment relationship terminates.

**BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY CLAIM COVERED BY THE ARBITRATION OBLIGATIONS IN THIS AGREEMENT DECIDED BY A JUDGE OR JURY IN A COURT.**

2.      The Parties agree that the following rules shall apply, notwithstanding any AAA rules to the contrary:

   a)      If the validity or enforceability of this Dispute Resolution Agreement is challenged, a court of competent jurisdiction, and not the arbitrator, shall determine whether the arbitration agreement is valid and enforceable and shall determine the arbitrability of Claims.

   a)      The Parties agree to select an arbitrator that will accept compensation on an hourly basis, rather than a lump-sum or otherwise flat-fee basis.

3.      The arbitration requirement does not apply to: (i) claims for workers compensation, state disability insurance and unemployment insurance benefits; or (ii) claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance; however, this Dispute Resolution Agreement does apply to claims for breach of fiduciary duty or for penalties thereunder, or alleging any other violation of the Employment Retirement Income Security Act of 1974, as amended, even if such claim is combined with a claim for benefits; and (iii) disputes that may not be subject to predispute arbitration agreements as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act.

1

EXHIBIT B

4.      Nothing in this Agreement prohibits you, on your own behalf and/or with or on behalf of others, from going to any governmental agency to file a report, charge, complaint, bring a Claim (including unfair labor practice charges), and/or seek any assistance, advice, or support. Such administrative Claims include, for example, Claims brought before the United States Equal Employment Opportunity Commission, the United States Department of Labor, the National Labor Relations Board, or the United States Department of Labor Office of Federal Contract Compliance Programs. Your ability to file any Claims or in any manner complain to government agencies applies to any city, municipal, county, parish, state, federal, or any other governmental body.  This arbitration requirement in this Agreement does not excuse a Party from exhausting administrative remedies where required or applicable.

5.      Company will not retaliate against, discipline, or threaten to retaliate against or discipline a Colleague for filing any Claims with, or going to, any governmental agency, including without limitation, exercising his or her rights under the National Labor Relations Act to file Claim(s) with, and/or participate in proceedings before, the National Labor Relations Board or to seek that agency's support and/or to petition for a union and/or to bargain collectively and/or to adjust and/or to assert any grievance.

6.      Employee and/or the Company may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with Claim(s) covered by the arbitration requirements in this Agreement.

7.      **EXCEPT FOR YOUR RIGHTS UNDER PARAGRAPH 4, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT AS A PLAINTIFF, CLASS, OR COLLECTIVE ACTION MEMBER IN ANY PURPORTED CLASS AND/OR COLLECTIVE ACTION PROCEEDING.**

8.      **FURTHERMORE, BY SIGNING THIS AGREEMENT, THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITIES AND NOT IN ANY REPRESENTATIVE PROCEEDING UNDER ANY PRIVATE ATTORNEY GENERAL STATUTE ("PAGA CLAIM"), UNLESS APPLICABLE LAW REQUIRES OTHERWISE.  IF THE PRECEDING SENTENCE IS DETERMINED TO BE UNENFORCEABLE, THEN THE PAGA CLAIM SHALL BE LITIGATED IN A CIVIL COURT OF COMPETENT JURISDICTION AND ALL REMAINING CLAIMS WILL PROCEED IN ARBITRATION.**

## ARBITRATION OPT-OUT OPTION

9.      Within 30 days after signing this Agreement, Employee may submit a form stating that Employee wishes to opt out and not be subject to the arbitration requirements in this Dispute Resolution Agreement. Employee must submit a signed and dated statement on a "Dispute Resolution and Arbitration Agreement for Consultants/Associates Opt Out Form" ("Form") that can be obtained from the Company Human Resources Department. Send your request for the Opt Out Form to: associatearbitration@adeccona.com.   An Employee who opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision. Should Employee not opt out of the Dispute Resolution Agreement in a timely manner, Employee and the Company will be deemed to have mutually accepted the terms of the Dispute Resolution Agreement.

10.     It is understood and agreed by the Parties that the Company's Client(s) and its/their officers, directors, employees, agents, parents, subsidiaries, and/or affiliated entities (collectively, "Third Party Beneficiaries") are intended to be third party beneficiaries to this Dispute Resolution Agreement. Although the Third Party Beneficiaries are not the Employee's employer, any Claim(s) that may be asserted against one or more of the Third Party Beneficiaries arising from or relating to Employee's work assignment at a Client shall be resolved pursuant to this Dispute Resolution Agreement in the same manner as Claim(s) made against Company.

11.     An Employee has the right to consult with counsel of the Employee's choice concerning this Dispute Resolution Agreement. Employee has read this Dispute Resolution Agreement carefully, fully understands the meaning of its terms and is signing it knowingly and voluntarily.

12.     The arbitration shall take place in the county or parish where Employee is or was last employed by the Company.

13.     If any provision(s) of this Dispute Resolution Agreement is declared overbroad, invalid or unenforceable, such provision(s) shall be severed from this Dispute Resolution Agreement and the remaining provisions of this Dispute Resolution Agreement shall remain in full force and effect and shall be construed in a fashion which gives meaning to all of the other terms of this Dispute Resolution Agreement.

2

**14.     TO THE EXTENT PERMITTED BY LAW, EMPLOYEE AND COMPANY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY FOR ALL CLAIMS.**

The Parties have voluntarily and knowingly executed this Dispute Resolution Agreement on the day and year signed by Employee below.

EMPLOYEE                                                    COMPANY NAME

HERMAN A GESENHUES (e-sign I agree)          ADECCO

DATE: 10/09/2017                                        DATE: 10/09/2017

3

EXHIBIT B